IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br> )<br>v. )<br> )<br>APPROXIMATELY $131,123 IN UNITED )<br>STATES CURENCY SEIZED ON OR ABOUT )<br>OCTOBER 31, 2024. ) | Civil No. 3:25-cv-00965 |

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

NOW COMES the United States of America, Plaintiff herein, by and through Russ Ferguson, United States Attorney for the Western District of North Carolina, in a civil cause of forfeiture, and respectfully states the following:

**INTRODUCTION**

1. This is a civil action *in rem* against approximately $131,123 in United States Currency seized on or about October 31, 2024 ("the Currency").

2. The Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, is proceeds traceable to such an exchange, and/or is money used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841 and/or 846.

3. The Currency is further subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it constitutes property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957, or any property traceable to such property.

4. Procedures for this action are mandated by 21 U.S.C. § 881, 18 U.S.C. § 983, 19 U.S.C. §§ 1602-1621, and, to the extent applicable, the Federal Rules of Civil Procedure and

accompanying Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action under 28 U.S.C § 1345 and 28 U.S.C. § 1355(a). The Court has in rem jurisdiction over the defendant property under 28 U.S.C. § 1355(b).

6. This Court has venue pursuant to 28 U.S.C §§ 1355 and 1395. Venue is proper because the acts or omissions giving rise to the forfeiture occurred in this district.

7. Based on the following facts, verified by Federal Bureau of Investigation ("FBI") Special Agent ("SA") Tristan Stewart, this action seeks the forfeiture of all right, title, and interest in the Currency.

## FACTS GIVING RISE TO FORFEITURE

8. On October 31, 2024, a white Mazda SUV was stopped for speeding around 1:00 a.m. on I-95 South near State Road 207, Saint Johns, Florida. The vehicle had two occupants at the time: driver Jorge David Ruiz Vasquez ("Ruiz Vasquez"), and passenger Bryan Steven Rivera Vera ("Rivera Vera").

9. During the traffic stop, law enforcement deployed K-9 Aragon, a properly trained and certified narcotics detection canine, to conduct an open-air sniff of the vehicle.

10. K-9 Aragon positively alerted to the odor of narcotics in/from the vehicle.

11. A search of the vehicle revealed a large amount of rubber-banded bulk currency inside a red Calven Klein backpack located on the rear passenger seat:



12. Neither Rivera Vera nor Ruiz Vasquez spoke English, and law enforcement separately spoke with each in Spanish.

13. Rivera Vera stated that the two of them left Miami with approximately $130,000 and drove to Charlotte, NC, in order to purchase cryptocurrency for a business that Rivera Vera owned. When asked the name of this business, Rivera Vera could not provide one.

14. Then, once in Charlotte, Rivera Vera said he met with a man (hereinafter, "Person A") at a Charlotte hotel to purchase Bitcoin. Rivera Vera only knew Person A by a nickname, and had only communicated with him via WhatsApp. The deal purportedly did not go through, and Rivera Vera and Ruiz Vasquez began driving back to Miami.

15. When asked where he obtained the roughly $130,000 for the attempted deal, Rivera Vera gave several inconsistent stories.

16. First, he stated that he received the money from his brother, Avelina Vellamezar,

who owns several "accident clinics" in the Doral, Florida area. Rivera Vera claimed the money came from several safes inside one of these clinics, but could not produce any proof of the business name or location.

17. Then, Rivera Vera contradictorily asserted the cash originated in Columbia from business and cars that he owned, but again, could not provide any documentation or specifics as to these purported businesses or sales.

18. Ultimately, when asked by law enforcement whether he could provide any type of documentation—such as deposit slips, banking information, etc.—showing the source of the currency, Rivera Vera admitted that he could not.

19. Next, Ruiz Vasquez told law enforcement that he and Rivera Vera had left Miami the previous evening to drive to Charlotte for a business deal, but he did not know where the money came from and was only traveling with Rivera Vera to help him drive.[1] Ruiz Vasquez claimed they went to a hotel while in Charlotte, but during that time, he slept in the room for a few hours and could not provide any information on who Rivera Vera met or the purpose behind the meeting.

20. Law enforcement later obtained CCTV footage from the Charlotte hotel at issue. In general, the footage reveals that Rivera Vera and Ruiz Vasquez arrived and checked in around 5:51 a.m. the morning of October 30, 2024.

21. That afternoon, at approximately 5:05 p.m., Person A arrived in the hotel parking lot and waited in his vehicle.

22. The white Mazda pulled into the hotel parking lot shortly thereafter at 5:13 pm, and Person A walked to the Mazda wearing a black backpack and carrying a large shopping bag with a coat draped over the bag's opening:

---

[1] Ruiz Vasquez indicated he was unemployed, but sometimes drove for Uber Eats.



23. Rivera Vera exited the Mazda, and walked with Person A into the hotel and up the stairwell to a room on the second floor:



24. Roughly 24 minutes later, Person A left the hotel without the large shopping bag, and departed in his vehicle. Rivera Vera and Ruiz Vasquez then left the hotel carrying the red

Calvin Klein backpack, and departed in the Mazda, driving back to Florida, whereupon the traffic stop detailed above occurred:



25. After seizure, the Currency was transported to Loomis, where it was counted and deposited into an account established to hold seized funds. The Currency totaled $131,123,[2] in denominations of 484 one-hundred-dollar bills, 149 fifty-dollar bills, 3,742 twenty-dollar bills, 43 ten-dollar bills, and 3 one-dollar bills.

26. The Currency's composition and storage is more consistent with the proceeds of narcotics trafficking than with legitimately derived funds and/or currency withdrawn from a bank. *E.g., United States v. $183,791.00 in U.S. Currency*, 391 Fed. Appx. 791, 795 (11th Cir. 2010)

---

[2] $128,600 was seized from the backpack, and $2,523 seized from Rivera Vera's pocket.

("Although a large amount of cash alone is insufficient to meet the government's burden, it is highly probative of a connection to some illegal activity . . . legitimate businesses do not transport large quantities of cash rubber-banded into bundles and stuffed into packages in a backpack . . . because there are better, safer means of transporting cash if one is not trying to hide it from the authorities. In contrast, drug rings do often utilize couriers to transport large amounts of cash in rubber-banded bundles.") (internal quotations and citations omitted).

27. The actions of Rivera Vera and Ruiz Vasquez were consistent with that of money couriers who work with drug trafficking organizations to pick up domestic drug proceeds in cash, and then transport that money to be laundered overseas, typically via wire transfers through funnel accounts held in the name of shell companies and/or conversion to cryptocurrencies, which are then electronically transferred.

28. Moreover, Rivera Vera and Ruiz Vasquez's trip was *inconsistent* with any legitimate business activity. For example, if Rivera Vera—rather than picking up drug proceeds in Charlotte, NC—actually had the roughly $130,000 in his possession on October 30, 2024, and simply needed to purchase cryptocurrency (or Bitcoin specifically) for a legitimate business, it made little sense for him to drive what was likely over ten hours from Florida with that cash to a hotel in Charlotte, NC to meet an individual for whom he only had a nickname and WhatsApp number to do so. Rather, Rivera Vera could have simply purchased the cryptocurrency online for his purported business at any number of cryptocurrency exchanges (Coinbase, Kraken, Binance, etc...)—doing so with much less effort, and in a more safe and secure manner without ever leaving Florida. And, if Rivera Vera did in fact need cryptocurrency for some legitimate business purpose, he would have at a minimum known the name of the business he purportedly owned when asked about it by law enforcement.

7

Case 3:25-cv-00965     Document 1     Filed 12/04/25     Page 7 of 10

29. Additionally, if the Currency was derived from a legitimate source, Rivera Vera would have been able to provide documentation of that (for example, bank records), whether at the time of the traffic stop or later with his administrative claim to the Currency, rather than evasive and inconsistent answers to straightforward questions regarding the Currency's source.

**FIRST CLAIM FOR RELIEF – THE CURRENCY**
**(21 U.S.C § 881(a)(6))**

30. The United States incorporates by reference the allegations set forth in the paragraphs above as if fully set forth herein.

31. The Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, is proceeds traceable to such an exchange, and is money used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841 and/or 846.

**SECOND CLAIM FOR RELIEF – THE CURRENCY**
**(18 U.S.C. § 981(a)(1)(A))**

32. The United States incorporates by reference the allegations set forth in the paragraphs above as if fully set forth herein.

33. The Currency is further subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it constitutes property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957, or any property traceable to such property.

**PRAYER FOR RELIEF**

34. By virtue of the foregoing, all right, title, and interest in the Currency vested in the United States at the time of the commissions of the unlawful act giving rise to forfeiture, 21 U.S.C. § 881(h), and has become and is forfeitable to the United States.

WHEREFORE, the United States of America respectfully prays the Court that:

1. A warrant for the arrest of the Currency be issued;

2. Due notice be given to all parties to appear and show cause why the forfeiture should not be decreed;

3. Judgment be entered declaring the Currency to be condemned and forfeited to the United States of America for disposition according to law; and

4. The United States be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action, including but not limited to the expenses of maintenance and protection of the Currency as required by 28 U.S.C. § 1921.

Respectfully submitted this 4th day of December, 2025.

    RUSS FERGUSON
    UNITED STATES ATTORNEY

    /s/ Seth Johnson
    J. Seth Johnson (Texas Bar No. 24083259)
    Assistant United States Attorney
    Suite 1650, Carillon Building
    227 West Trade Street
    Charlotte, North Carolina 28202
    Telephone: (704) 338-3159
    Email: seth.johnson@usdoj.gov

## VERIFICATION

I declare under penalty of perjury that the factual information contained in the foregoing Complaint is true and correct according to the best of my knowledge, information, and belief.

Executed on the 4th day of December, 2025.

*Tristan Stewart*
Tristan Stewart
Special Agent
Federal Bureau of Investigation